The court will call its first case of the morning. Agenda number 7, case 116653, People of the State of Illinois v. Brandon P. Are you ready to proceed? You may proceed. May it please the court, counsel, my name is Catherine Hart from the Office of the State Appellate Defender, and I represent the appellant, Brandon P. The Illinois and United States Constitution give every person charged with a criminal offense the right to confront his accuser. That right is triggered when the accuser makes a statement that is considered testimonial hearsay, and that statement is used as evidence at trial. In order to satisfy the confrontation clause, the accusing witness must be available at trial, or the statement may not be used. Trial courts make two determinations when considering whether to allow in as evidence at trial the hearsay statements of an accusing witness. First, is the witness available? And second, is the statement testimonial hearsay? In this case, the state has correctly conceded before this court that MJ, the complaining witness, was unavailable at trial, and that her statement to Officer Hogren was testimonial hearsay. Every party to these proceedings, with the exception of the appellate court, has agreed that based upon MJ's actions at Brandon's trial, both verbal and nonverbal, she was unavailable to testify. That finding of unavailability is the sole finding possible under the facts of this case, where the only information the state was able to elicit from MJ was her name, age, and the names of her immediate family. Ms. Hart, I'll have the same question for Ms. O'Connell, but in light of the concession, is it your opinion that we're only going to be looking at harmless error review here? This court, even with the state's concession, this court could make a finding to make sure that the 4th District or any appellate court understands exactly what an unavailable witness or an available witness is. The state's concession does not get rid of the confusion that the 4th District's opinion has created. Having said that, the ultimate issue here is whether this was harmless error. Yes. Even the limited responses were only made verbal after much prompting by the court, the state, and MJ's mother, and after many attempts to elicit testimony on direct examination. The state chose to release MJ as it was clear that she was unable to testify. In other words, she was never subject to direct examination. Defense counsel likewise did not attempt to examine what was clearly an unavailable witness, as the state itself has asserted. Defense counsel has no opportunity to cross-examine when the witness cannot testify at all. It was no surprise to any of the parties present during Brandon's trial that the court found MJ to be unavailable as a witness under 11510, and for purposes of cross-examination, because she did not testify. Because MJ was unavailable as a witness, the only way for her hearsay statements to Officer Hogan to be admitted at Brandon's trial was if the court found her statements non-testimonial hearsay, which is what the court did. The state has correctly conceded again before this court that the trial court was wrong, and that MJ's statements to Officer Hogan were testimonially hearsay. As the United States Supreme Court said in Crawford v. Washington, statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard, and that narrow standard is clearly present here, given the facts of the case. Ms. Hart, what's the significance of the DNA evidence? Under the harmless error standard, or specifically in this case, this is a constitutional error. And so the state has to prove beyond a reasonable doubt, and it's their burden, that the error did not contribute to the verdict. In this case, there was some scientific evidence. There were two exhibits. The first, 1A, is something called indicated semen. And indicated semen means that there was no sperm present and that there might be semen. This exhibit was taken from the complaining witness, her vagina. It was not from her underwear. And the scientist who testified testified that a semen-indicated finding could also indicate vaginal secretions, which is not surprising, given where the specimen was taken from. On top of that, on a scale of 1 to 4, with 4 being the strongest possible finding and 1 being the weakest, this was a 1. And so this evidence, exhibit 1A, has very tangential relevance, really, to a finding. What indicated semen means is not entirely clear in this case. The second exhibit, 1C, was DNA evidence on MJ's underwear. This evidence was not semen. They were able to determine that Brandon could not be excluded. That's not a match. Could not be excluded at 7 loci. That's 7 loci out of 16, which is not a finding that is considered very strong in the field of scientists who do DNA evidence. And that's discussed in my brief, and I believe even the State talks about that. It is clear that the DNA was male. But again, this is a 3-year-old child. All that means is that a male touched her underwear. So did the male touch her underwear to do the laundry, to put away the laundry, to get her clothes out? We don't know. The most important thing to remember in considering whether the State has met its burden, beyond a reasonable doubt, that the error did not contribute to the verdict, is just that. Did the error contribute to the verdict? Let's talk about that. I know that there is an additional fact in Hogren's testimony. But the State would say, and I'm wondering what you would say, as to Hogren's testimony being largely duplicative of Teresa's testimony. Teresa's testimony was a recitation of the excited utterance that MJ made. And what MJ actually said was, he did this and put it on my pee-pee. That is extraordinarily vague. And without Officer Hogren's testimony, that he put spit on my finger and put it in my vagina, and I told that to my aunt and uncle, and in addition, that Brandon put his wiener on her. Without that evidence, the only evidence that a crime was committed is this extremely vague, half nonverbal statement that MJ makes to her mother. And to say that Officer Hogren's testimony did not contribute to the verdict, it simply isn't possible. In this case, again, the standard is just, did this error contribute to the verdict? Let me ask you about the standard. You've argued that the question here is whether there was constitutional error, and you've stated the standard that has to be met in the terms of constitutional error. The State discusses this in terms of harmless error. What is it? What standard should we be looking at? I believe, if I'm incorrect, I don't mean to mischaracterize the State's argument, but I believe the State agrees that this was constitutional error. The violation of the Confrontation Clause is a constitutional error. And when it's a constitutional error, it's still harmless error, but it's a higher standard. The standard is, did the State prove beyond a reasonable doubt that the error did not contribute to the verdict? So we should not be looking at other cases that use a general harmless error standard talking about whether the evidence was overwhelming or not? That's not what we should be looking at. There are three factors, which this Court enunciated in People v. Patterson and People v. Wilkerson, and they're mentioned again in Rolande's G that talk about was the evidence duplicative, was it overwhelming, was it cumulative? Those are all things that can aid this Court in determining whether the State has met its burden of proving that the error did not contribute to the verdict. But that is the ultimate determination. Did the error contribute to the verdict in this case, at this trial? And I think another thing that you have to look at was the lengths that the trial court went to to get this statement that MJ made to Officer Hogren in. In the record, there's even a point after Officer Hogren testifies in the State. I believe it's before the State decides that they're not going to call MJ back. And the Court actually comes back to the parties and says this is also admissible under 705 ILCS 405-2-184C. It's at Volume 16, Record 56-57. That's actually an abuse and neglect statute. And then the Court, after it's clear that MJ is not going to be testifying, agrees that she's unavailable. And even though the Court has presented with cases that clearly show that this is testimonial hearsay, and even after this Court's statement in Rolanda's G, where this Court said we may not abridge constitutional guarantees simply because they are a hindrance to the prosecution of child sex abuse crimes. But the trial court says, well, that can't possibly be what you really meant, so I'm going to let this in. The Court obviously felt that Officer Hogren's testimony was incredibly important to the case. It contributed to the verdict. Hogren's testimony was plainly relevant and extremely prejudicial testimonial hearsay. An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot be conceived of as harmless. That's what the United States Supreme Court said in Chapman v. California. The State has not met its burden of proving beyond a reasonable doubt that the improper admission of the highly prejudicial testimonial hearsay from Officer Hogren did not contribute to the verdict. Is there anything else at this Court? I just want to go back for a second to the DNA evidence. And I understand your position, and I think the State would even again concede that it's not enough for an expert to testify that the responsible was the perpetrator. But how about the significance of it in light of the statement made to Teresa and the significance of it in light of the fact that Lucas said that something went on in the room and MJ had her pants off. I mean, when you put it all together, does that add up to harmless error? No. And let's look at those separate facts. First, let's talk about we already spoke about what MJ's statement to her mother actually was and how if you look at it, it's not very clear. It's very vague. Lucas's testimony is simply that he was in the room with Brandon, his sister MJ, and his sister Alana. So that's four people in this room and that at some point MJ was on the floor with her shirt on and her pants off. Now, in direct examination, the State never clarified, is that pants or underpants? And in the testimony throughout the trial, it's never clear whether she was naked from the waist down. And that's all that Lucas says. That's it. We don't, was somebody helping her get dressed? What was going on? We have no idea. The State doesn't get any more information from Lucas. Lucas doesn't say anything about Brandon in relation to MJ. As for the DNA evidence, 1A, which is a finding of 1 out of 1 to 4, the weakest finding, from a vagina where vaginal secretions would come up as possibly as indicated semen. What does that finding mean? It means nothing. And the DNA simply means that a man or a boy or whomever, somebody with male DNA, touched the underwear. Again, this is not a semen. This is not semen DNA. This is not sperm DNA. It's just male DNA. And in the course of a day or a week, how often do various people touch clothing, doing laundry, helping to get kids dressed, helping them to go to the bathroom? She was three years old. Who knows how the male DNA got on there? We don't have enough information. And how can you say, in the absence of this other testimony, that there was sufficient evidence that this hearsay testimony from Officer Hogren did not contribute to the verdict of guilt? You had indicated that I think that it's difficult, basically, to unring the bell once relevant admissible evidence comes before the jury, that it's impossible for them to disregard. I think that was part of your argument or included in your argument. How do we determine that, whether it contributed? Or are we expected to determine only whether there's sufficient other evidence to have convicted? Without using that invisible evidence. In this case, under this standard, the question or the inquiry is simply, did the error contribute to the verdict? It is not, in this absence of this, might there have been a guilty verdict. Did this evidence contribute to this verdict? And I think that the facts of the case clearly show that it did. This is a very high standard. This is a constitutional error. And the test is harder. And that's what this Court found in People v. Steckley, that the error in that case contributed to the verdict. And that was in a case where there's actually a confession. So as in Steckley, in this case, the error of admitting the testimony hearsay did contribute to the verdict. It is not a reasonable doubt. I'm sorry. Steckley was a plurality, right? Plurality opinion? It was a plurality. And there were, I mean, quite some distinguishing facts, right? Yes. I mean, a couple of bobs, they didn't know which two bobs were mentioned, right? So the facts, it is distinguishable on the facts, right? Absolutely. But what this Court, plurality opinion notwithstanding, found was that the error contributed to the verdict. And that is, again, the standard here. Did the error of admitting this testimony hearsay contribute to the verdict of guilt against Brandon P? And the answer is yes, it clearly did. Now, this was a juvenile delinquency proceeding, is that correct? Yes. So it was a hearing before the judge. It was a hearing before the judge. Does that change the analysis? No, it does not change the analysis. The protections are the same regardless of whether it's court or jury. And, in fact, Stackley was a bench trial. And do we give the same weight to the judge's findings in the case as far as what he considered? He considered all of the evidence presented to him. He has fairly detailed findings. But he clearly considered Officer Hogan's testimony as part of the case. Thank you.  If we find that the testimony of the officer was merely duplicative of the statement made to the mother, does that mean that it is not, that it is harmless error? Even where, even where it was, it had similar evidence to the excited utterance, again, the inquiry is, you can, this Court can look at, was the evidence overwhelming? Was there cumulative evidence? Was it duplicative? But the final inquiry is, this testimony from Officer Hogan was, was significantly more detailed than, again, this half nonverbal utterance that MJ made to her mother. And so it's, it's not completely duplicative. That's the first thing. But even with, even if you thought that that was cumulative, the focus is still, did the error of admitting this testimonial hearsay contribute to the verdict? And without Officer Hogan's testimony, you have an extremely vague statement from a young girl who does not appear to be able to speak very well. It's not clear what exactly her statement to her mother is. He did this and put it in my pee pee. And you have this inconclusive scientific evidence. Even Lucas's testimony does not actually state that anything happened in that room. And so to say that Officer Hogan's testimony did not contribute to the verdict is not possible under the standard. If this Court has no further questions. Thank you. Ms. O'Connell. May it please the Court. Counsel. I'm Assistant Attorney General Erin O'Connell on behalf of the people. The issue that this Court should address in this case is whether the error that occurred, the conceded error that testimonial hearsay was admitted in violation of the Confrontation Clause constituted harmless error. I don't think there's a dispute between the parties as to what the appropriate standard is. The overall standard is was the error harmless beyond a reasonable doubt. This Court has explained, elaborated on that standard to say that there are three considerations that should be used in assessing that ultimate question. One of those is whether the error contributed to the verdict, focused on the error. One is whether the other evidence was overwhelming. And one is whether the evidence that was erroneously admitted was duplicative. In this case, I think it's clear that the evidence was duplicative and the remainder of the evidence was overwhelming. I first want to start by pinning down exactly what the outcry statement was. Counsel has made the claim that the statement was not verbal, that there was some content in the statement. Volume 12 of the record, which is cited in the reply brief, is the transcript of the hearing on the admissibility of the testimony. This Court should look instead at the actual trial testimony of Teresa. Her trial testimony was that her daughter came to her and said that respondent put spit in her pee-pee. That's at Volume 17, page 8. The cross-examination that occurred at the pretrial hearing was not repeated at trial. So we have no basis on which to believe that this was, in fact, a nonverbal communication. From the record, it appears that the child did say to her that the respondent put spit in her pee-pee. I also don't think that respondent is really disputing that the outcry statement occurred as Teresa said. Therefore, the issue is whether the statement that was made, admittedly, was a credible statement corroborated by other circumstances. We did have a bench trial in this case, and that means that we have the benefit of the trial court's reasoning. We know why the trial court found that this outcry statement was believable. The court cited and even stated outright, aside from the statement to the mother, everything else has to do with corroboration of the three-year-old statement. That corroboration was all properly admitted. We know from the facts that the respondent spent the afternoon with the victim in a bedroom upstairs with other small children. Shortly after he left, a mere five to ten minutes, MJ came to her mother, and her initial complaint was a physical one. She said that she had to go to the bathroom, but it hurt to urinate. It was only when Teresa asked why that was the case that she volunteered spontaneously the statement that respondent had put spit in her pee-pee. Teresa immediately acted on her complaint. She took the child first to respondent's parents, and then to the emergency room, clearly taking the child's statement seriously. Once she was in the emergency room, they did the sexual assault kit, and there was some corroboration in the form of forensic evidence. We know that the scientist, or rather the doctor who would have been swabbing the underpants, we know that the area of the underpants that were swabbed were actually where the child's genitals would have touched the underwear. And I think that's significant, because there are innocent explanations for why male DNA might be on a child's underwear. Maybe there was an adult male who helped her get into her panties. But I think that the area where this occurred, there are many fewer innocent explanations for why there would be male DNA on the inside of a child's underwear. The court did have a question as to what issues should we look at in this case. There really can be no dispute. I mean, the court need only cite to Rolandes-G to say that this was a testimonial statement that was admitted in error. This court's made clear that the only time that even a small child's statement to a police officer will be deemed non-testimonial is when it is given under emergency circumstances. That just didn't happen here. We had a two-day delay between the time of the event and then the questions by officer Hogan. Should we address the issue of availability? Obviously, we're in a somewhat unusual situation here where the State made a similar concession at the appellate level, which was rejected by the appellate court. The court ordered the State to change their position or at least brief different issues, and the State went ahead and did so. The appellate court decision that we're reviewing makes some very strong statements about how it was inexplicable that the State took the position that it did, made some comments about how much of the Illinois judiciary has decided this case and did this issue, these issues availability in a much different way than the way the State presented it. The appellate court made some very specific findings as to what the key inquiry is in terms of availability, and that's whether the declarant was present, later saying something similar that, here in this case, M.J. appeared in quotes for cross-examination. In other words, the appellate court decision defines availability in the terms of physical presence and not, as what occurred here, that the State has conceded it was unavailable. So what should we do with all this? Should we address this? How do we address it? Can we ignore it? Is this really an issue, as the appellate court decision says, that is all or I think he says, again, that most of the Illinois judiciary has taken a certain position that agrees with the appellate court decision? Should we, do we need to take that on? The issue of availability shouldn't be part of the case, and that's because of the State's concession. Because of the concession, the record is underdeveloped in terms of what she understood at the time that she was giving her testimony. Did she even understand the difference between the truth and a lie? The appellate court, as you've noted, it was even conceded in the appellate court. The appellate court erred in rejecting the State's concession and going on to consider the issue sua sponte. This Court has made clear that while the appellate court has some limited power to address errors that are obvious on the record, it really shouldn't be in the business of raising issues that have been conceded below and that the parties are not trying to dispute. To the extent the court rules on availability, I believe it's the appellate court's actions in this regard that merit discussion. The problem that the appellate court created by addressing this issue. But it's really the concession itself that should be given effect here. The court, I think it's difficult to look at this record and decide de novo whether the child was available or not. And the appellate court didn't even apply the appropriate standard of review. I would also note, because this was an issue that should have been under an abuse of discretion standard. And the appellate court never acknowledged that standard or applied it. Because of that standard, this Court really isn't faced with a record on which it could hold that it was an abuse of discretion for the trial court who had observed the child's demeanor to find that she was unavailable. But until the appellate court interjected that issue, it was a straightforward case. It was, was this testimonial hearsay? And was its admission, if so, harmless error? And those are the issues that this Court should address. Is this a burning issue, however, in the appellate court? I mean, the opinion seems to say all, all except one case in the appellate court, all cases agree with the holding here, in our underlying case here, that the mere presence, the physical presence of the witness is sufficient to be, to meet the standard of availability. Is that really what all of the appellate courts are saying, then? The issue that is being disputed in the appellate courts presumes that you have a competent witness on the stand. And the question is whether she has testified in sufficient detail to enable effective cross-examination. That appears to be the gist of the cases on which the appellate court relied. The problem here is that the appellate court, I think, misunderstood the basis for the finding of unavailability. And that's that under the facts of this case, this 4-year-old child was unable even to answer basic background questions. And she went back and forth on how many sisters she had. In the cases where it has been an issue as to whether a defendant can argue that a child was unavailable and has not attempted to cross-examine, those cases rest on there being a witness on the stand who gave at least some testimony, even some substantive testimony. So the issue that the Court addressed really, under the facts of this case, isn't presented. And the dispute in the appellate courts really has nothing to do with the reason here that there was a finding of unavailability. And unfortunately, I think it was because the State cited People v. Learn that the appellate court even addressed the issue, because People v. Learn is not the right citation. It's not the right – their rationale is not why the trial judge in this case found the child unavailable. The reason in this case is something that the appellate courts should all be in agreement on, which is that if you do not have a competent witness, then she's not available for either direct examination or cross-examination. What about the Struckley standard about the issue about fear in the child, that a child who is frightened is not available? This Court has held that that is a basis for finding a child unavailable in Rolandes G., which was – the Stepsley opinion was a plurality, but Rolandes G. was an opinion of the Court. And this Court did – I think in – I think it's clear from Stepsley, but even more from Rolandes G., that what matters first is whether this is a police officer questioning and eliciting statements regarding a past event. The child's perspective becomes relevant only if the police officer is not involved in taking these statements in a police investigation context. At that point, the trial judge would be correct that 3-year-old MJ did not have the understanding that anything she said would be relevant to a criminal proceeding. Didn't the trial court in this case also say she was frightened? The court did. In finding her unavailable, yes. The court mentioned that being frightened is sufficient to find unavailability in addition to incompetence is also another basis for unavailability. The trial court didn't err in that regard in finding her unavailable under the standard that this Court has articulated. And the confusion, I think, arose because the Court was applying the standard that was meant to apply in non-police situations, and this Court at least subsequently made clear that that's not the correct analysis. I had one final point to make, unless the Court has further questions, about the trial court's actions in finding Officer Hogan's statement admissible. I think opposing counsel kind of suggested a little bit of bad faith on the part of the trial court in citing a different statute as a potential basis for admissibility. The circumstances, though, reflected the issue was not her statement to Officer Hogan. It was other statements that she made to Respondent's parents. And the issue, those were not admitted at trial. And the issue was whether those were in the notice that was filed sufficient to comply with the statute 115-10. The Court said it might not meet the notice requirements of that statute, but there's another statute. Maybe we can argue about whether they're admissible there. But the State said we're just not interested in admitting that testimony. And the record shows that the Court thought long and hard about whether the statement was testimonial. The Court just made an honest mistake in applying the test incorrectly. So it's really not fair to say that the Court was acting almost as an advocate on behalf of the State here. The Court was trying to maintain a fair proceeding, raising all the legal issues that might come up, even issues that the parties ended up not presenting. The Court made sure that proper procedure was being followed at all stages. So in sum, this Court has before it the trial court's factual finding that MJ told her mother, Respondent put spit in my pee-pee. The Court also knows that the issue that was before that court was whether there was sufficient corroboration. Officer Hogan's testimony did not go to either issue. He confirmed that MJ told Teresa the statement. And he also said that he asked whether it was true or not. But that really didn't get to the ultimate issue of is the statement that she made credible and corroborated. And Officer Hogan's testimony does not speak to that point. And the remainder of the record shows that the trial court had sufficient basis for finding that this was a credible outcry statement by a very small child who really would have no motive or necessarily ability to fabricate a claim like this. So there may be sufficient evidence. That seems to be what you're arguing, that there's sufficient evidence. The question is, does the evidence rise to the standard of constitutional error and harmless error? Is this the standard that we have to determine whether or not the evidence was overwhelming? That is one of the considerations, is whether the evidence was overwhelming. Do you think the evidence is overwhelming? The evidence was overwhelming. Correct. What I'm getting at is not that the evidence was sufficient to support the trial judge's holding. It's that the trial judge stated his reasoning on the record. We know exactly why he found that this occurred. And if you look at that reasoning, it's clear that nothing that the court relied on in making that finding is impacted by the admission or non-admission of Officer Hogan's testimony. So I'm suggesting the court can at this point look even at the subjective rationales of the trial court, and in making that analysis, should find that Officer Hogan's testimony is not sufficient to support the trial judge's holding.     And I think the evidence was overwhelming. So I would direct the court to the court's key finding that this was a credible complaint of sexual abuse. Is it Patterson that defines the constitutional harmless error standard? Or is there another case? This Court has utilized the same standard in a lot of different cases. It was in Patterson. So Patterson, my question is, is that the case to look at? I would direct the Court to Rolandes G. Okay. Which rearticulated the same standard and really applied it in similar circumstances. Thank you. Sure. If the Court has no further questions, we would ask that you affirm the judgment  Thank you. In terms of the standard, Justice Kilbride, in Rolandes G, this Court says, as noted in Stoeckley, Crawford violations are subject to harmless error review, and the test is whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained. So that is clearly the standard. This Court then goes on to say that things that you can consider to determine that might have contributed to the conviction, overwhelming evidence, all of those things that we've talked about. But the focus, the real inquiry is, did the error contribute to the verdict? Excuse me. Did you read that it's the statement the language did not contribute? Is that the key language? It says, whether it appears beyond a reasonable doubt that the error at issue did not contribute to the verdict obtained. That's at 232 Illinois 2nd 43. In answer to your earlier question, Justice Tice, does this Court need to talk about availability? The problem that we have with the Fourth District is that they sort of went out on a limb in their decision. And I'm going to quote their language here. Despite MJ's apparent unwillingness or inability to testify. So their standard is, even when a witness gets on the stand and cannot testify, or will not testify in terms of the fear, are they afraid of testifying? That's okay. They've been brought to trial, and they can tell you their name, and then they're available. And to leave that out there and not address this. How is it left out there? How is it left out there if we basically say they erred for not going along with the concession of the State? I mean, doesn't that, and it's just that statement alone, not leave it out there, to use your words? If this Court wishes to simply accept the State's concession and affirm the finding of the trial court that MJ was unavailable, yes. In a sense, the Court's finding is negated. But there's still this question. And all of the cases that the Fourth District cited really had to do with memory. Was there a memory loss? The witnesses in those cases got on the stand, and they did testify. Your position would be the only thing we'd be doing there, really, is saying that when there is a concession, accept the concession, and not necessarily saying that the concession was right and that the witness was unavailable. I think it would be gray. It would be cloudy. Okay. I see your position. The other thing I wanted to address briefly was Teresa's statement about what MJ said to her. And if you look at Teresa's statements all through the process, preliminary hearing, 11510 statement, trial, it's clear in her 11510 statement she says, defense counsel says, this is at volume 12, record 14. Again, this is the 11510 hearing. Defense counsel says she used the actual word spit. And Teresa says, she went like, said, he did this and put it on my PPE. So, again, this is not an entirely verbal statement. This is half verbal and half nonverbal. And I just want to direct your focus once again to the standard here, which is there's a constitutional error. Testimonial hearsay was admitted in violation of the Confrontation Clause. And was that testimony, did it contribute to the verdict obtained? And the answer to that question is yes, it did. We would respectfully ask this Court to reverse and remand for a new trial. Thank you. Thank you. Case number 116653, People of the State of Illinois v. Brandon P., will be taken under advisement as agenda number seven. Ms. Hart, Ms. O'Connell, thank you for your arguments. You are excused at this time.